UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>V.<br><br>ERNEST WILLIAM SINGLETON,<br><br>Defendant. | CRIMINAL NO. 5:13-08-KKC-REW<br><br><br>OPINION & ORDER |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Ernest William Singleton's motion for reconsideration of a July 21, 2016 order denying his motion to recuse. (DE 395.)

On June 20, 2013, a jury found Defendant guilty of conspiring to distribute various narcotics and of other charges related to the distribution of narcotics. (DE 201, Verdict; DE 285, Judgment.) Defendant alleged that this Court's evidentiary ruling regarding Kentucky State Police ("KSP") recordings during his criminal trial reasonably called into question the undersigned's impartiality in any future proceedings. Thus, Defendant moved for recusal pursuant to 28 U.S.C. § 455 ("Section 455"), which, in relevant part, provides that:

> Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(a). That motion was denied.

As grounds for reconsideration, Defendant contends (1) that this Court misperceived his argument regarding the exclusion of the audio portions of video evidence and (2) that this Court's prior order did not address all of the grounds Defendant raised in his original motion. Neither argument persuades this Court to sway from its prior ruling.

1

## I. ANALYSIS

### A. Video Evidence

Regarding the video evidence, Defendant alleges that he took issue with this Court having ruled on admission of the video evidence without viewing the entirety of the tapes. However, the prior order addressed precisely that contention:

> Defendant contends that "any reasonable person would conclude that a judge making a ruling on the relevance or admissibility of evdence [sic] in a criminal case cannot do so based on a sampling of less than 1%, specifically 0.25% of the total evidence, the KSP recordings, in question." (DE 393-1 at 3.) Thus, Defendant concludes that a reasonable person could only reasonably conclude that this Court was biased or prejudiced against him. (DE 393-1 at 3.) This Court disagrees.

(DE 395 at 2.) Defendant cites to no authority that would require this Court to watch all 200 hours of video evidence, as opposed to precisely those portions of the video introduced at trial. Nor did the circumstances of this case necessitate such an extensive perusal.

Here, it was the Government that sought to introduce the surveillance videos, not the Defendant. Defendant never sought to introduce audio portions from the tapes that were not connected to the visual portions introduced at trial. Instead, Defendant sought to have those audio portions admitted only by opposing the Government's motion to have them excluded. (DE 298 at 17–21.)

Moreover, contrary to Defendant's assertion, this Court never claimed to have watched every surveillance video related to the investigation. Defendant quotes—presumably from the record, though no citation is provided—this Court as stating that "I have watched the videos and there isn't anything there."[1] Clearly, this statement, if indeed

---

[1] Upon review of the trial transcript, the Court was able to locate a statement during a bench conference at which the Court noted that it had reviewed all of the tapes and that the audio "has absolutely nothing to do with the content of the tape and it doesn't have any relevant evidence on it at all." (DE 304 at 167.)

made by the Court, would be in reference to the videos that were to be introduced at trial, not every second of surveillance footage gathered during the course of the Government's investigation. Defendant's efforts to cherry-pick portions of the trial transcript and construe them to suit his purposes are unpersuasive. The cited comment must be read in the context of the full record. Viewed in light of the scope of Defendant's objection, there is no suggestion that the Court intended to claim what Defendant contends.

In any event, as Defendant acknowledged in his original motion, the standard for recusal based on rulings in a prior trial is a stringent one. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (noting that disputed judicial rulings are almost invariably "proper grounds for appeal, not for recusal"). Such rulings will only justify recusal if they "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* That is the standard Defendant needed to satisfy, and that is the standard this Court addressed in its earlier opinion and order. Defendant's instant motion adds nothing to suggest any such bias.

That Defendant questions this Court's "**INTEGRITY**" is irrelevant for purposes of his motion. *Allphin v. United States*, 758 F.3d 1336, 1344 (Fed. Cir. 2014), *cert. denied sub nom. Anderson v. United States*, 135 S. Ct. 761 (2014). The fact remains that the Court watched the portions of the surveillance tapes that were the subject of the Government's motion to mute the audio, while admitting the video portions. This Court's exclusion of those audio portions was affirmed by the Sixth Circuit Court of Appeals. *See United States v. Singleton*, 626 F. App'x 589, 600 (6th Cir. 2015). The ruling was based on firm legal principles, not any undue bias toward Defendant. In short, neither this Court's statements regarding exclusion of audio portions of the video nor the exclusion itself forms a reasonable basis for questioning this Court's impartiality.

**B. New Arguments**

Defendant alleges that this Court's prior order failed to address several issues from his original motion including: (1) pending misconduct charges filed by Defendant against this Court; (2) allegations regarding statements made by the Court during the course of trial; (3) alleged delay in finalizing Defendant's criminal judgment; and (4) Defendant's claim that the undersigned will be called as a material witness in forthcoming 28 U.S.C. § 2255 ("Section 2255") proceedings.[2] (DE 397 at 2.) However, even upon re-examination, this Court can identify only one of these issues within the four corners of Defendant's original motion. Defendant did mention criminal and ethics complaints; however, neither the original motion nor the instant motion develops an argument as to how such complaints would justify recusal.

*1. Misconduct Complaints*

Defendant's perfunctory reference to pending complaints against this Court provides little for this Court to address. If Defendant's claims justified recusal, a defendant would need only file such a complaint to effectively veto the assignment of a judge to his or her case. *Cf. In re Basciano*, 542 F.3d 950, 957 (2d Cir. 2008), *cert. denied*, 555 U.S. 1177 (2009) ("Requiring a judge to recuse himself because the defendant, in an attempt to change judges, has plotted or threatened to kill the judge would provide any defendant who wanted a new judge with an effective, if in some cases dreadful, method to achieve that end. A defendant cannot be permitted to use such a plot or threat as a judge-shopping device.").

This Court's determination regarding Defendant's complaints is further bolstered by advice from the Committee on Codes of Conduct of the Judicial Conference of the United

---

[2] Defendant also restates his argument regarding the video evidence ruling. (DE 397 at 2 ¶ 6.) This issue was addressed by the Court's original order and yet again in the preceding paragraphs.

States ("Committee") as to the application of Canon 3C of the Code of Conduct for United States Judges. *See* Guide to Judiciary Policy, Vol. 2B, Ch. 2, Published Advisory Opinions. Although not binding with respect to Defendant's 28 U.S.C. § 455 claim, Canon 3 is substantially identical to that statutory provision, and the committee's interpretation "should doubtless be given considerable weight in a judge's determination of her ethical obligations." *Ragozzine v. Youngstown State Univ.*, 783 F.3d 1077, 1080 (6th Cir. 2015).

Both Canon 3 and Section 455 create an objective standard for recusal determinations. The Committee identified several non-exclusive factors that should be weighed in determining whether the filing of a complaint against a judge provides a reasonable basis for questioning his or her impartiality including: "the nature of the complaint, the applicable law, [and] the possibility of factual issues involving the credibility of the named judge[.]" Guide to Judiciary Policy, Vol. 2B, Ch. 2, Published Advisory Opinions, No. 103. Defendant believes that his filing of a complaint provides grounds to question this Court's impartiality. However, as stated previously, Defendant's subjective belief is insufficient to satisfy the Section 455 requirement, and Defendant has offered no evidence or argument in support of his conclusory statement that a complaint's filing, ipso facto, justifies recusal.

Defendant's remaining arguments were not raised in his original recusal motion. (DE 393-1.) Though Defendant made similar claims in an affidavit attached to his original motion, Federal Rule of Criminal Procedure 47(b) only permits an affidavit in *support* of a motion. The affidavit and motion are separate documents and the allowance of affidavits is limited to "the use of affidavits when affidavits are appropriate to establish a fact"; the rule does not authorize "speaking motions." *See* Fed. R. Crim. P. 47 n.3. Nonetheless, because

Defendant is proceeding *pro se*, and in the interest of efficiency, this Court will address his remaining arguments.

### 2. Trial Comments.

Defendant's affidavit alleges that this Court demonstrated bias by making "off color comments" about Defendant's business operations. Without citation, Defendant quotes the Court as stating "I am very aware that no medical care was being given at those clinics." (DE 393-2.) Defendant also describes as "most shocking" an alleged "comment before the jury, during the 9th day of trial," which, Defendant claims, shows that this Court had already reached a conclusion as to Defendant's guilt that was shared with those present at trial. (DE 393-2 at 1–2.) Although, misquoted, Defendant is presumably referencing this Court's statement that "[o]nce this defendant gets to prison, this doesn't need to be out there." (DE 307 at 35.)

Defendant again seeks to cherry-pick statements from this Court, construing them to support his arguments without regard to their obvious meaning in context. The endeavor is equally unpersuasive in this instance. Defendant mischaracterizes this Court's statement regarding a defendant going to prison in at least two ways. First, the statement was made at a bench conference, and the jury was not privy to the contents of the discussion. (DE 307 at 34.) Second, and most importantly, the "defendant" the Court referenced was the witness on the stand at that time, Dr. Bruce Gregory White. Dr. White pled guilty prior to testifying in Defendant's trial and the bench conference was held before Dr. White was cross-examined regarding the contents of the sealed supplement to his plea agreement. Thus, that "defendant" was, indeed, going to prison. Defendant's attempts to misconstrue the clear import of this Court's comments during a bench conference do not justify any reasonable questioning of this Court's impartiality.

The Court has searched the trial transcript in vain for its alleged statement regarding the medical care given at the Defendant's clinics. The Court was unable to find such a statement. Even if such a statement were made, recusal would not be justified because it is supported by the evidence presented at trial. The *Liteky* Court provides an apt summary of the distinction between an unfavorable opinion toward an individual or business that is *warranted*, which is neither prejudicial nor biased, and an unfavorable disposition that is *unwarranted*, which is prejudicial or biased:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943). Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

*Liteky v. United States*, 510 U.S. 540, 550–51 (1994). Thus, even if this Court stated that the Defendant's clinics existed for the purpose of dispensing controlled substances outside the scope of medical practice and not for a legitimate medical purpose, as Defendant alleges, that statement would provide no basis for recusal. Evidence supporting such a conclusion was presented at trial—enough in fact, for a jury to reach the same conclusion. Under the circumstances, such a statement would not lead a reasonable person to question this Court's impartiality.

### *3. Alleged Delay in Finalizing Defendant's Sentence*

Defendant claims this Court demonstrated bias toward him by delaying fourteen months to "finalize his criminal judgment." (DE 393-2 at 2.) It is not clear what dates Defendant is referencing with regard to this claim, nor has Defendant offered any supporting citations regarding the alleged e-mails sent by this Court's clerks.[3] Regardless, the record reveals that just more than a month separated Defendant's March 18, 2014 sentencing and this Court's April 29, 2014 entry of judgment. (DE 280; DE 285.)

Although this Court stated that written judgment would be delayed "approximately ten days," it also noted that the timing was contingent upon resolution of Defendant's motions for a judgment of acquittal and for a new trial, as well as upon the Government's addition of property subject to forfeiture. (DE 277.) Defendant's efforts to convert this Court's initial estimation of an approximate timeline for entry of a final judgment into a binding decree will be rejected. Defendant fails to explain how a reasonable question regarding this Court's impartiality could arise from this Court using several more weeks than it originally anticipated to draft a twenty-six page opinion and order addressing two of Defendant's own motions prior to a final entry of judgment. Defendant's bare assertion that a reasonable person could infer that this Court sought to punish Defendant for taking the case to trial will not suffice.[4]

---

[3] Defendant claims that an e-mail stated that a clerk of this Court would be "long gone before the judgment is signed." (DE 397 at 2.) Even if such an e-mail did exist, Defendant has provided no explanation for his suggestion that such an e-mail illustrates bias on behalf of the Court. In the absence of such an explanation, this Court cannot discern how its clerk's departure dates might raise a suspicion of bias or prejudice.

[4] This conclusion is only bolstered by the fact that this Court was clearly aware that Defendant had decided to bring his case to trial when it provided the estimated timeline—a timeline that Defendant apparently deems appropriate—at his sentencing. Nor does Defendant's actual sentence support his argument, Defendant was sentenced below the applicable guideline range. (DE 327 at 52–53.)

### *4. Proposed Future Testimony in § 2255 Proceedings*

Finally, Defendant contends that recusal is required because he will call the undersigned as a material witness in a forthcoming Section 2255 proceeding. (DE 393-2 at 2; DE 397 at 2.) Section 455 of Title 28 provides, in part, that any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, or is or has been a material witness. By its terms, this section only requires disqualification when a judge actually *is* or *has been* a material witness. Defendant has yet to file a Section 2255 claim, nor does he identify what disputed material facts he expects would require the undersigned's testimony. "'Unsubstantiated speculation' about the possibility that the judge will be required to be a material witness concerning a disputed issue is not enough to require recusal." *United States v. Salemme*, 164 F. Supp. 2d 49, 78 (D. Mass. 1998) (quoting *Murray v. Sevier*, 929 F. Supp. 1461, 1467–68 (N.D. Ala. 1996)). Thus, Defendant's unsupported claim is insufficient to justify disqualification on its face.

Moreover, Section 2255 explicitly requires that a motion be filed with "the court which imposed the sentence." 28 U.S.C. § 2255(a). And, as the Fourth Circuit has held, "sections 2255 and 455 of Title 28 should be construed together." *United States v. Smith*, 337 F.2d 49, 53 (4th Cir. 1964). "[I]t is highly desirable . . . that [Section 2255] motions be passed on by the judge who is familiar with the facts and circumstances surrounding the trial, and is consequently not likely to be misled by false allegations as to what occurred." *Carvell v. United States*, 173 F.2d 348, 348–49 (4th Cir. 1949). Given the absence of any support for Defendant's contention that the undersigned would be required to testify, and Congress's explicit requirement that Section 2255 motions be filed with the sentencing court, Defendant's final argument for recusal must also be rejected.

## II. CONCLUSION

Defendant has made clear that he questions this Court's impartiality. However, Section 455 creates an objective standard, requiring a Court to consider whether, under all the circumstances, its impartiality might *reasonably* be questioned. Here, Defendant has misunderstood, or misconstrued, the record in several circumstances and offered unsupported conclusory allegations in others. In sum, Defendant has failed to present any basis from which an objective observer would question this Court's impartiality based on the actual circumstances of this case.

Accordingly, **IT IS ORDERED** that Defendant's motion to reconsider his motion to recuse (DE 397) is **DENIED**.

Dated November 4, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY